

## U.S. Department of Justice

United States Attorney's Office
District of Delaware

---

*The Hercules Building*
*1313 N. Market Street*
*P. O. Box 2046*                                     *(302) 573-6277*
*Wilmington, DE 19801*                          *FAX (302) 573-6220*

August 21, 2023

**BY CM/ECF**
Hon. Christopher J. Burke
Magistrate Judge
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:  *United States v. David Crosby-Avant*, **Criminal Action No. 23-71-MN**

Dear Judge Burke:

      In the case referenced above, a detention hearing has been scheduled for August 25, 2023. In advance of the hearing, the Government submits this letter in support of its motion for pretrial detention. Dkt. 6.

      A defendant must be detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In certain circumstances, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e)(3). One such circumstance is where "there is probable cause to believe that the person committed . . . an offense under [18 U.S.C.] section 924(c)." 18 U.S.C. § 3142(e)(3)(B).

Here, a grand jury has determined that there is probable cause the Defendant violated 18 U.S.C. § 924(c)(1)(A)(ii), which prohibits brandishing a firearm during and in relation to a crime of violence. *See* Dkt. 2 at 1–2. Thus, there is a rebuttable presumption that the Defendant should be detained pending trial.

The Defendant will not be able to overcome that presumption. First, the Defendant is indeed a danger to the community. This case arises out of the Defendant's unprovoked, armed assault on a federal task-force officer ("TFO"). In late June, an FBI task force was conducting surveillance near the corner of Morrow Street and W. 8th Street in Wilmington. The Defendant arrived at the scene, seemingly unarmed, and entered a home on Morrow Street. Minutes later, he emerged with a large bulge in the pocket of his hoodie and a mask covering his face. After taking a lap around the block, the Defendant approached the vehicle from which the victim TFO was conducting surveillance. The Defendant first attempted to wrench open the door closest to the TFO. He then pulled a black handgun with an extended magazine. He slammed the gun into the car window several times, and then backed away while pointing the gun at the window. When the TFO drew his own weapon and began to exit the vehicle, the Defendant fled around the corner back onto Morrow Street.

There, he was stopped at gunpoint by another member of the task force. At the time of the stop, the Defendant was on the sidewalk and the agent was in the street. The two were separated by an SUV, which obstructed the agent's view of the lower half of the Defendant's body. The agent ordered the Defendant to raise his hands. The Defendant first raised a single hand. The agent then heard a metallic thump, after which the Defendant raised his second hand. When the task force searched under the SUV, they found a black handgun with an extended magazine—the same type of gun the victim TFO had seen. The gun was behind the wheel closest to where the Defendant had been standing when he was stopped. The gun was loaded with 24 rounds.

In short, the Defendant initiated a conflict with a federal TFO and then assaulted him with a loaded gun. And not just any loaded gun—a gun with an extended magazine, which courts around the country have

2

recognized to be especially dangerous. *See, e.g., United States v. Blackson*, 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023) ("An extended magazine allows the firearm to carry more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm."). That dangerous conduct is reason enough to detain the Defendant pending trial.

Moreover, in light of the Defendant's criminal history, there is no reason to believe he would refrain from committing gun crimes while on pretrial release. The Defendant has been a convicted felon—and thus barred from possessing firearms—since 2010.[1] Yet in that time, he has accumulated two additional felony convictions for unlawful gun possession[2] and committed the instant assault with a gun. In sum, even though multiple courts have previously told the defendant that he may not possess a firearm, he has not listened. There is no reason to think he would heed the Court's orders this time around.

The Defendant also cannot rebut the presumption that he poses a risk of non-appearance. To begin, the Defendant has shown an inability to comply with court-ordered conditions: he has at least four prior violations of probation and (particularly relevant here) eight prior failure-to-appear capiases. When that history of non-compliance is combined with the steep sentence he faces—including a mandatory-minimum sentence of 7 years if he is convicted on the § 924(c) count—there is a substantial risk that the Defendant will attempt to evade justice.

---

[1] The Defendant's 2010 felony conviction was for possession with intent to distribute a Schedule I non-narcotic controlled substance, in violation of then-existing Del. Code tit. 16 § 4752.

[2] In 2017, the Defendant was convicted of two counts of possession of a firearm by a person prohibited, in violation of Del. Code tit. 11 § 1448.

3

For the foregoing reasons and any additional ones set forth in the Pretrial Services Report, the Defendant should be detained pending trial.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

_____
Benjamin L. Wallace
Assistant United States Attorney

cc: Eleni Kousoulis, Esq. (via ECF)
    Conor Wilson, Esq. (via ECF)